**BRECKENRIDGE PHARMACEUTICAL, INC., Plaintiff,**

v.

**METABOLITE LABORATORIES, INC. and Pamlab, L.L.C., Defendants.**

No. 04–80090–CIV.

United States District Court, S.D. Florida.

Dec. 3, 2004.

John M. Landis, Stone Pigman Walther Wittmann, New Orleans, LA, Hugh Q. Gottschalk, Wheeler Trigg & Kennedy, Denver, CO, Robert Edward Pershes, L.A. Perkins, Buckingham Doolittle & Burroughs, for plaintiff.

Jane Wollner Moscowitz, Moscowitz Moscowitz & Magolnick, Miami, FL, for plaintiff and defendants.

Glenn K. Beaton, Amanda J. Tessar, J. Gregory Whitehair, Gibson Dunn & Crutcher, Denver, CO, for defendants.

### ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT ORDER RESETTING TRIAL AND PRETRIAL DEADLINES

COHN, District Judge.

THIS CAUSE is before the Court upon Defendant Metabolite's Motion to Dismiss Complaint for Lack of Personal Jurisdiction [DE 12], Defendants' Motion to Strike Amended Complaint and Request for Decision on Metabolite's Motion to Dismiss [DE 59], Defendant Metabolite's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction [DE 62], and the parties' Joint Motion for Enlargement of Pretrial Deadlines and Trial Date [DE 69]. The Court has carefully considered the motions and is otherwise fully advised in the premises.

### I. BACKGROUND

Breckenridge Pharmaceutical, Inc. ("Breckenridge" or "Plaintiff") filed this action for a declaratory judgment of non-infringement, tortious interference with business relationships, and unfair competition. Breckenridge seeks this relief from the patent holder, Metabolite Laboratories, Inc. ("Metabolite"), and the licensee for the patents, Pamlab, L.L.C. ("Pamlab"). The patents at issue in this case relate to the "method of treating or preventing elevated serum metabolite levels." Amended Complaint, ¶ 15. Through a license agreement with Metabolite, Pamlab manufactures and distributes a vitamin product known as FOLTX for treating or preventing elevated serum metabolite levels. Id., ¶ 16. Metabolite has no involvement in the manufacturing, marketing, or sales of FOLTX, other than it receives royalties and quarterly sales reports. See generally, Deposition of Robert H. Allen, M.D. [DE 67]. Breckenridge manufactures a similar product. On or about December 18, 2003, Metabolite and Pamlab filed a lawsuit in the United States District Court for the District of Colorado against Breckenridge asserting patent infringement. Id., ¶ 1. On or about December 23, 2003, the District Court denied Metabolite and Pamlab's motion for temporary restraining order. Id., ¶ 2. Metabolite and Pamlab voluntarily dismissed the action that same day. Id.

This dispute arose on or about January 13, 2004, when Metabolite sent 10–20 letters to vitamin distributors or retailers

informing them of their vitamin-related patents and Pamlab's exclusive license. The letter also stated that:

> one or more small generic drug companies are offering generic equivalents to FOLTX. As that patent owner, Metabolite wanted to alert you to the patent coverage on FOLTX. We would urge you to consult with your patent attorney before entering into any arrangements for the distribution, dispensing or substitution of these generic equivalents in place of a legitimate prescription or order for FOLTX.

*See* Exhibit A to Plaintiff's Response in Opposition to Defendant Metabolite's Motion to Dismiss Amended Complaint [DE 65] (hereinafter "Metabolite attorney letters"). Three (3) of these letters were sent to Florida businesses. *Id.* Breckenridge filed this lawsuit on January 29, 2004, within about eight (8) days of learning of these letters.

Metabolite initially moved to dismiss the complaint based upon a lack of personal jurisdiction [DE 12].[1] In response to the motion, Breckenridge sought, and obtained, leave of court to conduct jurisdictional discovery and to extend the time to respond to the motion to dismiss until June 14, 2004 [DE 21 and 24]. On June 14, 2004, Breckenridge moved for a further extension based upon the parties' discovery dispute [DE 35]. The Court granted the motion and set a response date for July 30, 2004 [DE 37]. On July 29, 2004, Breckenridge sought a third extension of time to respond to the motion to dismiss

[DE 53]. The Court denied this motion, but allowed Breckenridge to respond to the motion by August 18, 2004 [DE 56]. On August 18, 2004, Breckenridge filed an Amended Complaint [DE 58]. Defendants then moved to strike the Amended Complaint and for the Court to decide the motion to dismiss the initial complaint [DE 59]. Breckenridge then sought and obtained leave to file an amended complaint [DE 60 and 61]. Metabolite then filed the present motion to dismiss the amended complaint for lack of personal jurisdiction [DE 62].

## II. DISCUSSION

■■■■ The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure requires that both assertion of jurisdiction and service of process be determined by the state long-arm statute. *Cable/Home Communication Corporation v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir.1990); *Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed.Cir.1998).[2] If there is a basis for the assertion of personal jurisdiction under the state statute, the Court must next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend "traditional notions of fair play and substantial

---

1. Pamlab obtained an order allowing it to delay responding to the Complaint until ten days after the Court enters a ruling on Metabolite's motion to dismiss.

2. The parties partially dispute whether decisions from the United States Court of Appeals for the Federal Circuit or for the Eleventh Circuit govern this case. Metabolite argues that because the declaratory judgment claim

concerns patent infringement, Federal Circuit case law must control. While not disputing this point, Plaintiff argues that because the Court could have supplemental jurisdiction over the state law claims, Eleventh Circuit case law must control. The Court does not find any difference between the two Circuits on issues of personal jurisdiction, with an exception discussed in footnote 5, *infra.*

justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Only if both prongs of the Due Process analysis are satisfied may this Court exercise personal jurisdiction over a nonresident defendant. *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 256 (11th Cir.1996) (citing *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990); *International Shoe Co. v. Washington,* 326 U.S. at 316, 66 S.Ct. 154).

■ When the district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant. A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. However, where the plaintiff's evidence and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff. *Robinson,* 74 F.3d at 255 (11th Cir. 1996) (citing *Madara,* 916 F.2d at 1514); *accord, Venetian Salami Co. v. Parthenais,* 554 So.2d 499 (Fla.1989).[3]

### A. Florida Long–Arm Statute

■ Plaintiff's Amended Complaint asserts jurisdiction under Florida Statutes Section 48.193(1)(a), (1)(b), (1)(f) and (2).

However, in response to Metabolite's motion to dismiss, Plaintiff asserts jurisdiction pursuant to § 48.193(1)(b) and (1)(f).[4] Jurisdiction is proper in Florida if a person does any of the following acts:

(1)(a) operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state.

. . .

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

1. The defendant was engaged in solicitation or service activities within this state;

. . .

(2) Engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

### 1. Commission of Tort

■ Plaintiff asserts that the three letters that Metabolite caused to be sent to Florida distributors of Plaintiff's product were tortious, thus creating personal juris-

---

3. The Court notes that Breckenridge has had the opportunity to conduct jurisdictional discovery in this case, and therefore cannot simply rest upon the jurisdictional allegations in the Amended Complaint.

4. To the extent that Plaintiff has not abandoned its arguments for jurisdiction pursuant to Fla. Stat. § 48.192(1)(a) and (2), the Court finds that Metabolite has submitted unrebutted testimony that Metabolite does not operate a business in Florida, nor is it engaged in substantial and not isolated activity within

this state. *See generally,* Deposition of Robert H. Allen, M.D. [DE 67]. Metabolite is a small company with few employees, formed by two University of Colorado professors in conjunction with their agreements with the University of Colorado. Metabolite owns certain patents, performs assay testing at the labs of the University, and sells reagents to a handful of other laboratories, none of which is in Florida. *Id.* Finally, the contacts of Pamlab, Metabolite's licensee, cannot be attributed to Metabolite. *See Red Wing Shoe Co.,* 148 F.3d at 1359, 1361.

diction. Plaintiff relies upon *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla.2002), wherein the Florida Supreme Court stated that:

> First, in order to "commit a tortious act" in Florida, a defendant's physical presence is not required. Second, "committing a tortious act" in Florida under section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida. However, the cause of action must arise from the communications. This predicate finding is necessary because of the connexity requirement contained in section 48.193(1).

In this case, this part of the test is met with respect to the tortious interference claim. However, the Florida Supreme Court also stated that the court must determine whether the allegations of the complaint state a cause of action. 822 So.2d at 1260. Whether a tort was committed necessarily involves a discussion of Metabolite's argument that their letters are protected communications under federal patent law and therefore not actionable as tortious interference under state law. The Court will address this issue within the due process analysis, *infra*.

### 2. Causing Injury Within Florida

Before addressing that issue, the Court first discusses whether Metabolite caused injury to Plaintiff while Metabolite engaged in solicitation activities in Florida. Each side focuses their argument on a particular section of the letters. If the Court only analyzed the last paragraph of the letters that alerts the Florida distributors to the existence of Metabolite's patents, it is true that this part of the letter does not contain a solicitation. *See* Metabolite Attorney Letters. However, the letter must be read as a whole. On the third paragraph of the two page letters, Metabolite describes the FOLTX product and

Pamlab's exclusive license, as well as stating that Pamlab's promotional materials are enclosed with the letter. Although Dr. Allen may have testified that he did not know whether Pamlab's sales (and thus Metabolite's royalties) would increase as a result of sending the letter, the words of the letter can be construed as solicitation activities. Allen Deposition at 65–66.

### B. Due Process

■ The due process component of personal jurisdiction involves a two-part inquiry. In the first prong, the Court must consider whether Defendant engaged in minimum contacts with the state of Florida. In the second prong, the Court must consider whether the exercise of personal jurisdiction over Defendant would offend "traditional notions of fair play and substantial justice." *Cronin v. Washington Nat'l Ins. Co.*, 980 F.2d 663, 670 (11th Cir.1993) (citing *International Shoe Co.*, 326 U.S. at 316, 66 S.Ct. 154; *Madara*, 916 F.2d at 1515–16).

### 1. Minimum Contacts

■ Minimum contacts involve three criteria: First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. Finally, the defendant's contacts within the forum state must be such that it should reasonably anticipate being haled into court there. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir.1996).

■ Plaintiff argues that the letters sent by Metabolite to distributors in Florida regarding Defendant's intent to protect its patent rights provides sufficient minimum contact with Florida as a tortious act committed in Florida against a Florida resident. If the cease and desist letters

did nothing more than provide notice of existing patents, then perhaps the letters are insufficient. However, because the letters also could be construed as containing a solicitation, they are evidence of purposeful availment of the benefits of conducting business in Florida. In addition, the contacts are related to Plaintiff's cause of action. Thus, sufficient minimum contacts with Florida do exist.

### 2. Traditional Notions of Fair Play and Substantial Justice

■■■ However, because the letters inform others of Metabolite's patent rights, with only a cursory attempt at soliciting business, "principles of fair play an substantial justice defeat the reasonableness of jurisdiction." *Red Wing Shoe*, 148 F.3d at 1360 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).[5] Federal Circuit precedent on this issue is quite clear. Such cease and desist letters, even if coupled with offers to license the product, are insufficient for personal jurisdic-

tion to attach to this conduct. *Red Wing Shoe*, 148 F.3d at 1360–61;[6] *Hildebrand v. Steck Mfg. Company, Inc.*, 279 F.3d 1351, 1356 (Fed.Cir.2002) (All documented contacts were for the purpose of warning against infringement or negotiating license agreements); *Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194, 1202 (Fed. Cir.2003). In this case, Metabolite has no other contacts with Florida, other than its three Attorney Letters.[7]

■■■ Plaintiff argues that the Court still has personal jurisdiction over its state law claims. When non-patent claims are not "intimately linked" to patent law, the court follows the law of the regional circuit. *Silent Drive, Inc.*, 326 F.3d at 1201. In this case, the tortious interference and unfair competition claims are intimately linked to patent law because they are based upon the presumption that the implication of infringement in Metabolite's Attorney Letters are false.[8] Amended Complaint, ¶¶ 42, 45–46. Even if they were not so linked, an analysis of the Eleventh

---

5. In the Eleventh Circuit, the factors to decide whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice" are: 1) the burden on the defendant in defending the lawsuit; 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and, 5) the shared interest of the states in furthering fundamental substantive social policies. *Cronin*, 980 F.2d at 671 (citing *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); *Madara*, 916 F.2d at 1517). The Federal Circuit uses the same factors in its reasonableness analysis. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1363 (Fed.Cir.2001).

6. Plaintiff's attempt to distinguish Red Shoe on the grounds that Metabolite contacted a third-party distributor and not the alleged infringing party is a factual distinction without

a difference in applying Federal Circuit law to this issue. Cease and desist letters are often sent to both infringers and retailers.

7. In the case relied upon by Plaintiff, the Federal Circuit relied upon other contacts with the forum state. *Electronics For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir.2003).

8. The Court notes that in *Silent Drive*, the Federal Circuit did not reach the question of whether personal jurisdiction applied to the tortious interference claim related to the cease and desist letters in that case, because the plaintiff had failed to allege independent subject matter jurisdiction. 326 F.3d at 1203. In this case, although Plaintiff failed to argue that diversity jurisdiction existed to support its tortious interference and unfair competition claims, its Amended Complaint does assert such a basis for subject matter jurisdiction. Amended Complaint, ¶ 7. Therefore, this Court must address personal jurisdiction over the state law claims.

Circuit's factors to decide whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice" would not change the result. *See* footnote 5, *supra*.

■ As to the first factor, the Defendant argues that as a small, privately-owned Colorado company with all its employees in Colorado, forcing Defendant to defend a patent infringement suit in Florida is extremely burdensome. While it is true that modern methods of transportation and communication have lessened the burden of traveling cross-country, this Court tends to agree that there is a significant burden on Defendant in defending this lawsuit in Florida.

The second factor, Florida's interest in adjudicating the dispute, is only partially applicable in this case, as the principal dispute between the parties is one of federal patent law. Obviously, the state of Florida has an interest in protecting Florida companies, but to the extent tort claims are precluded by federal law, such interest is diminished.

The third factor, the plaintiff's interest in obtaining convenient and effective relief, does favor the Plaintiff. As a local company with a patent dispute with a Colorado company and possible tort claims, Plaintiff has an interest in obtaining relief from a federal court closest to its headquarters. However, it is clear that Plaintiff could have brought this suit in federal court in Colorado, and thus a dismissal on personal jurisdiction grounds does not prejudice the ability of the Plaintiff to obtain full and effective relief.

The fourth factor, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, tips slightly toward Defendant, in that jurisdiction is clear in the District of Colorado, a state with presumably a much smaller case load than here in the Southern District of Florida. Finally, the fifth factor, the shared interest of the states in furthering fundamental substantive social policies, also plays little role in this patent dispute.

Given that the Eleventh Circuit factors do not clearly weigh in favor of or against jurisdiction, the fact that Federal Circuit precedent clearly precludes personal jurisdiction over the patent claims and linked state law claims, the Court concludes that under traditional notions of fair play and substantial justice, personal jurisdiction over Defendant in Florida is unfair under the United States Constitution.[9]

## III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Metabolite's Motion to Dismiss Complaint for Lack of Personal Jurisdiction [DE 12] is hereby **DENIED as moot;**

2. Defendants' Motion to Strike Amended Complaint [DE 59–1] and Request for Decision on Metabolite's Motion to Dismiss [DE 59–2] are hereby **DENIED;**

9. Plaintiff has argued that its claims are not preempted under Federal Circuit law. Tortious interference and unfair competition claims are preempted, unless the communications alleging infringement are "objectively baseless". *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1377 (Fed.Cir.2004). In this case, Metabolite's Attorney Letters do not even allege infringe-ment. Rather they alert distributors to Metabolite's patents, state that "generic drug companies are offering generic equivalents," and urge the distributors to consult with their own patent attorney. The letters do not mention Plaintiff by name. Thus, even if personal jurisdiction were to be found in this case for the state law claims, such claims would be preempted.

3. Defendant Metabolite's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction [DE 62] is hereby **GRANTED;**

4. Pursuant to the April 5, 2004 Order in this case, Pamlab shall now respond to the Amended Complaint by December 17, 2004;

5. The parties' Joint Motion for Enlargement of Pretrial Deadlines and Trial Date [DE 69] is hereby **GRANTED;**

6. The following deadlines shall now apply to this case: Witness list exchange by March 1, 2005; Expert reports by June 1, 2004; Rebuttal expert reports by July 1, 2005; Fact and expert discovery by August 1, 2005; Mediation by August 1, 2005; Dispositive pretrial motions and motion to exclude or limit expert testimony by September 2, 2005; Joint Pretrial Stipulation and motions in limine by November 3, 2005; Responses to motions in limine and proposed jury instructions (and/or proposed findings of fact and conclusions of law) by November 17, 2004; and Voir Dire questions by Calendar Call;

7. The claim constructions briefs shall now be due by June 1, 2005, with responses to the briefs due by July 1, 2005. These briefs and response briefs should be no longer than twenty (20) pages in length. No "reply" briefs shall be submitted;

8. If any party seeks a court hearing regarding any claim construction issues ("*Markman* hearing"), such request must be filed by June 1, 2005. Such request for a *Markman* hearing should be limited to discussing why such a court hearing is necessary, whether extrinsic evidence is intended to be submitted, how much time would be required for such hearing, and should be limited to five pages or less in length;

9. The trial in this case is hereby reset for the two-week period commencing Monday, November 28, 2005, with a Calendar Call now set for Wednesday, November 23, 2005 at 1:30 pm.