# United States Court of Appeals for the Federal Circuit

2007-1553

AVOCENT HUNTSVILLE CORP.
and AVOCENT REDMOND CORP.,

Plaintiffs-Appellants,

v.

ATEN INTERNATIONAL CO., LTD.,

Defendant-Appellee.

James D. Berquist, Davidson Berquist Jackson & Gowdey, LLP, of Arlington, Virginia, argued for plaintiffs-appellants.  With him on the brief were J. Scott Davidson and Donald L. Jackson.

Steven D. Hemminger, Akin, Gump, Strauss, Hauer & Feld LLP, of Palo Alto, California, argued for defendant-appellee.  E. Robert Yoches, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, of Washington, DC, and Ming-Tao Yang, of Palo Alto, California, for defendant-appellee.

Appealed from:  United States District Court for the Northern District of Alabama

Judge C. Lynwood Smith, Jr.

# United States Court of Appeals for the Federal Circuit

2007-1553

AVOCENT HUNTSVILLE CORP.
and AVOCENT REDMOND CORP.,

Plaintiffs-Appellants,

v.

ATEN INTERNATIONAL CO., LTD.,

Defendant-Appellee.

Appeal from the United States District Court for the Northern District of Alabama in case no. 07-CV-625, Judge C. Lynwood Smith, Jr.

_____

DECIDED: December 16, 2008

_____

Before NEWMAN, SCHALL, and LINN, Circuit Judges.

Opinion for the court filed by Circuit Judge LINN. Dissenting opinion filed by Circuit Judge NEWMAN.

LINN, Circuit Judge.

This appeal concerns the personal jurisdiction of a U.S. district court over a Taiwanese company in a suit for declaratory judgment of non-infringement and invalidity of two U.S. patents owned by that Taiwanese company. Because the plaintiffs failed to allege that the Taiwanese company purposefully directed any activities beyond merely sending notice letters at residents of the forum and that the declaratory judgment action arose out of or related to those activities, we affirm the district court's dismissal of all claims for lack of personal jurisdiction.

# I. BACKGROUND

Avocent Huntsville Corp. ("Avocent Huntsville") and Avocent Redmond Corp. ("Avocent Redmond") (collectively "Avocent") are subsidiaries of Avocent Corporation, a Delaware corporation located in Huntsville, Alabama. Avocent develops and markets computer hardware devices. Aten International Co., Ltd. ("Aten International") is a corporation formed under the laws of Taiwan, with its principal place of business in Taipei, Taiwan. One of Aten International's U.S. subsidiaries, Aten Technology, Inc. ("Aten Technology"), is located in Irvine, California. IOGEAR, which is located at the same address as Aten Technology, is also affiliated with Aten International.

Avocent and Aten International compete in the manufacture and sale of keyboard-video-mouse switches ("KVM switches"), which allow a computer user or users to share a single keyboard, video device, and mouse, or multiple sets of keyboards, video devices, and mice. It is undisputed that various Aten International products are available for sale within Alabama. Avocent has alleged that Aten International purposefully directed these products to Alabama both by injecting them into the stream of commerce and through direct sales activities. Specifically, Avocent has alleged the sale and delivery to Alabama of a product purchased through the "Clearance Center" webpage of the ATEN-USA.com website published by Aten International, the existence of products manufactured by Aten International and offered for sale at Best Buy and CompUSA retail stores in Alabama, the availability of Aten International products through nationwide and Internet retailers, and the availability of these products through a government contractor located in Alabama.

Aten International is the assignee of U.S. Patent Nos. 6,957,287 ("the '287 patent") and 7,035,112 ("the '112 patent"), both of which relate to KVM switches. This appeal relates to Aten International's attempts to enforce these patents against Avocent.

Aten International's enforcement efforts are reflected in three letters. The first is a letter dated May 28, 2004, from counsel for Aten Technology to John Cooper, the CEO and President of Avocent Corporation, stating:

> Pursuant to Section 154(d) of the U.S. Patent Act, please be advised that the U.S. Patent Office has published a patent application owned by our client Aten Technology, Inc. A copy of the published patent application is attached. We suggest that you review the claims as we believe they are relevant to a product your company is making, using, selling, offering to sell and/or importing.

J.A. at 473.[1] A copy of the published patent application leading to the '112 patent was attached to this letter. The second is a letter dated April 27, 2006, from IOGEAR to Amazon in Seattle, Washington, encouraging Amazon to discontinue selling various products allegedly infringing the '112 patent, including the "Avocent SVM200." Id. at 470-71. This letter collectively referred to Aten International, Aten Technology, and IOGEAR as "ATEN/IOGEAR" and asserted that this entity owned the '112 patent. The third letter was sent on March 15, 2007, at a time when Aten International and Avocent Redmond were litigating infringement of KVM patents owned by Avocent Redmond in a separate suit in the Western District of Washington. The letter was sent by counsel for Aten International to counsel for Avocent Redmond in Arlington, Virginia, asserting that Aten International's '112 and '287 patents were infringed by Avocent's KVM switch

---

[1] We note that while the letter states that Aten Technology owned the patent application, the published application attached to this letter shows the assignee as Aten International.

products and stating that efforts to resolve all outstanding disputes between the parties and avoid further litigation would require consideration of those patents as well as the others in suit. Id. at 448.

In reaction to these letters, on April 6, 2007, Avocent filed a complaint against Aten International in the United States District Court for the Northern District of Alabama for declaratory judgment of non-infringement and invalidity of the '287 and '112 patents. The complaint also presented claims of unfair competition under the Lanham Act, 15 U.S.C. § 1125, and intentional interference with business or contractual relations under Alabama law. Aten International subsequently moved, inter alia, to dismiss the entire action for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, or in the alternative, to transfer the case under 28 U.S.C. § 1404(a) to the Western District of Washington where Avocent Redmond had sued Aten International for patent infringement related to three KVM patents owned by Avocent Redmond.

The district court granted Aten International's motion to dismiss the entire action without prejudice for lack of personal jurisdiction. Avocent Huntsville Corp. v. Aten Int'l Co., No. 07-CV-625, slip op. at 13 (N.D. Ala. Aug. 30, 2007). The district court held that it could not exercise specific jurisdiction over Aten International based on the letters asserting infringement, id. 8, concluding that under Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1360-62 (Fed. Cir. 1998), Aten International "did not purposefully submit itself to jurisdiction in Alabama by sending the three letters listed above." Avocent, slip op. at 10. The district court also rejected Avocent's assertion of general jurisdiction based on the availability of Aten International's products for sale in Alabama under a "stream of commerce" theory. Id. at 10-13. After noting that "it is not

clear whether these KVM switches are the ones with patents involved in the Washington action, the instant action, or neither," id. at 11-12, the district court found the most instructive case to be Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424 (Fed. Cir. 1996) (applying the stream of commerce holding of Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558 (Fed. Cir. 1994), in the context of a declaratory judgment action and holding that jurisdiction was proper where there were purposefully directed activities in the forum through an established regular distribution channel). The district court held that, as distinguished from Viam, "[n]o similar systematic and continuous contact by [Aten International] with Alabama has been shown by the plaintiffs." Avocent, slip op. at 13. Avocent timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Standard of Review

Personal jurisdiction is a matter of law that we review de novo. Genetic Implant Sys., Inc. v. Core-Vent Corp., 123 F.3d 1455, 1457 (Fed. Cir. 1997) (citing Viam, 84 F.3d at 427). Moreover, we apply Federal Circuit law because the jurisdictional issue is "intimately involved with the substance of the patent laws." Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995); see also Beverly Hills Fan, 21 F.3d at 1565 ("Under [jurisdictional] circumstances such as these, we have held we owe no special deference to regional circuit law."). Furthermore, we apply our own law to all of the claims where "the question of infringement is a critical factor in determining liability under the non-patent claims." Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1362 (Fed. Cir. 2006).

In this case, "[b]ecause the parties have not conducted discovery, [Avocent] needed only to make a prima facie showing that [Aten International was] subject to personal jurisdiction. As such, the pleadings and affidavits are to be construed in the light most favorable to [Avocent]." Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003) (internal citations and quotation marks omitted); see also Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003) ("[W]here the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction. In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." (internal citations omitted)).

## B. Analysis

"Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001). Alabama's long-arm statute permits service of process "as broad as the permissible limits of due process." Ala. Power Co. v. VSL Corp., 448 So. 2d 327, 328 (Ala. 1984). Thus, our jurisdictional analysis collapses into a single determination of whether the exercise of personal jurisdiction comports with due process.

1.

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). While the application of this description of due process has evolved along with the increasing national and international scope of business transactions affecting citizens of this country, the Supreme Court has repeatedly cautioned that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (internal citations and quotation marks omitted). Accordingly, "[e]ach defendant's contacts with the forum State must be assessed individually," Calder v. Jones, 465 U.S. 783, 790 (1984), and "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State," Hanson, 357 U.S. at 253.

While it may be argued that "a nonresident corporation should expect . . . amenability to suit in any forum that is significantly affected by the corporation's commercial activities," Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408,

423 (1984) (Brennan, J., dissenting), the Supreme Court has disagreed: "Although it has been argued that foreseeability of causing <u>injury</u> in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of forseeability is not a 'sufficient benchmark' for exercising personal jurisdiction." <u>Burger King</u>, 471 U.S. at 474 (footnote omitted). Similarly, "[t]he mere fact that [defendants] can 'foresee' that the article will be circulated and have an effect in [the forum state] is not sufficient for an assertion of jurisdiction." <u>Calder</u>, 465 U.S. at 789. "Instead, 'the forseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" <u>Burger King</u>, 471 U.S. at 474 (quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)).

Consistent with these principles, the Supreme Court has drawn a distinction between "specific" jurisdiction and "general" jurisdiction. To establish specific jurisdiction, a plaintiff must demonstrate that "the defendant has 'purposefully directed' his activities at residents of the forum, <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 774 (1984), and the litigation results from alleged injuries that 'arise out of or relate to' those activities, <u>Helicopteros</u> [466 U.S. at 414]." <u>Burger King</u>, 471 U.S. at 472-73. "Although the nexus necessary to satisfy the 'arise out of or related to' requirement of the due process inquiry has not been clearly delineated by the Supreme Court, we have stated that it is significant that the constitutional catch-phrase is disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure 'arise out of' standard." <u>Inamed</u>, 249 F.3d at 1362 (citing <u>Akro</u>, 45 F.3d at 1547);

see also Helicopteros, 466 U.S. at 415 n.10 (declining to address whether there should be a "distinction between controversies that 'relate to' a defendant's contacts with a forum and those that 'arise out of' such contacts"); id. at 425 (Brennan, J., dissenting).

To establish the minimum contacts necessary to establish general personal jurisdiction, plaintiffs bear a higher burden.  Specifically, where a plaintiff's claims do not arise out of or relate to the defendant's contacts with the forum State, "[w]e . . . must explore the nature of [the defendant's] contacts with the [forum State] to determine whether they constitute . . . continuous and systematic general business contacts." Helicopteros, 466 U.S. at 415-16 (emphasis added).

In addition to the foregoing general principles of "specific" and "general" jurisdiction, the Supreme Court has also commented on the amenability to suit of persons engaged in activities that result in the flow of goods in commerce.  The Court has explained that

> if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.  The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

World-Wide Volkswagen, 444 U.S. at 297-98.  Significant confusion relates to this "stream of commerce" explication, as demonstrated by the Supreme Court's subsequent split in Asahi Metal Industry Co. v. Superior Court regarding whether or not "[t]he placement of a product into the stream of commerce, without more," may serve as "an act of the defendant purposefully directed toward the forum State."  480 U.S. 102,

112 (1987) (emphasis added) (O'Connor, J.). See generally Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1321-22 & n.7 (Fed. Cir. 2005) (discussing the conflicting plurality opinions in Asahi, noting that we have yet to decide between Justice Brennan's lenient approach and the more rigorous standard adopted by Justice O'Connor, and recognizing a split of authority in the regional circuits on this point). Moreover, because this theory of jurisdiction originates in the product liability context, which lends itself to the specific jurisdiction framework, it remains unclear whether contacts based solely on the "stream of commerce" may suffice to establish general jurisdiction. The Fifth Circuit, for example, has held that such contacts will not support a finding of general jurisdiction. Bearry v. Beech Aircraft Corp., 818 F.2d 370, 375 (5th Cir. 1987).

The Supreme Court has also instructed that personal jurisdiction may be "proper because of [a defendant's] intentional conduct in [another State] calculated to cause injury to [the plaintiff] in [the forum State]." Calder, 465 U.S. at 791. In Calder, the Supreme Court held that the author and editor of an allegedly libelous article circulated in California, albeit written and edited in Florida, which "they knew would have a potentially devastating impact upon [the plaintiff]," and which targeted a resident of California, was not "mere untargeted negligence." Id. at 788-90. "Rather, their intentional, and allegedly tortious, actions were expressly aimed at California," and thus they "must 'reasonably anticipate being haled into court there.'" Id. at 789-90 (quoting World-Wide Volkswagen, 444 U.S. at 297).

Finally, "[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of

other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320). Relevant factors include: "[1] 'the burden on the defendant,' [2] 'the forum State's interest in adjudicating the dispute,' [3] 'the plaintiff's interest in obtaining convenient and effective relief,' [4] 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and [5] the 'shared interest of the several States in furthering fundamental substantive social policies.'" Id. at 477 (quoting World-Wide Volkswagen, 444 U.S. at 292). While "[t]hese considerations [may] sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required . . . where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. (internal citations omitted).

2.

Against this backdrop of Supreme Court authority, we have held in the context of patent infringement litigation that an assertion of general jurisdiction "requires that the defendant have 'continuous and systematic' contacts with the forum state," and that such activity will "confer[] [general] personal jurisdiction even when the cause of action has no relationship with those contacts." Silent Drive, 326 F.3d at 1200. With respect to specific jurisdiction,

> [t]his court employs a three-prong test, in which we determine whether: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. With respect to the last prong, the burden of proof is on the defendant, which must present a compelling case that the presence of some other considerations would render

> jurisdiction unreasonable under the five-factor test articulated by the Supreme Court in <u>Burger King</u>.

<u>Breckenridge</u>, 444 F.3d at 1363 (internal citation and quotation marks omitted). "The first two factors correspond with the 'minimum contacts' prong of the <u>International Shoe</u> analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." <u>Inamed</u>, 249 F.3d at 1360. We have also applied the stream of commerce theory, although we have not resolved the split in authority reflected in the competing plurality opinions in <u>Asahi</u>. <u>See</u> <u>Beverly Hills Fan</u>, 21 F.3d at 1566.

a.

In the ordinary patent infringement suit, the claim asserted by the patentee plaintiff is that some act of making, using, offering to sell, selling, or importing products or services by the defendant constitutes an infringement of the presumptively valid patent named in suit. <u>See</u> 35 U.S.C. § 271(a). Thus, for purposes of specific jurisdiction, the jurisdictional inquiry is relatively easily discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum. <u>See</u> <u>Red Wing Shoe</u>, 148 F.3d at 1360. In such litigation, the claim both "arises out of" and "relates to" the defendant's alleged manufacturing, using, or selling of the claimed invention. But in the context of an action for declaratory judgment of non-infringement, invalidity, and/or unenforceability, the patentee is the defendant, and the claim asserted by the plaintiff relates to the "wrongful restraint [by the patentee] on the free exploitation of non-infringing goods . . . [such as] the threat of an infringement suit." <u>Id.</u> Thus, the nature of the claim in a declaratory judgment action is "to clear the air of infringement charges." <u>Id.</u> Such a claim neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the

forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit. The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee "purposefully directed [such enforcement activities] at residents of the forum," and the extent to which the declaratory judgment claim "arises out of or relates to those activities."[2] Breckenridge, 444 F.3d at 1363. This inquiry necessarily places greater

---

[2] This inquiry should not be confused with the "case or controversy" requirement of the Declaratory Judgment Act, 28 U.S.C. § 2201(a). While the Supreme Court recently altered the subject matter jurisdiction landscape by rejecting the "reasonable apprehension of suit" test, see SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1380 (Fed. Cir. 2007) (recognizing that "[t]he Supreme Court's opinion in [MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007)], represents a rejection of our reasonable apprehension of suit test"), the independent requirement of personal jurisdiction over the defendant remains an important and independent limit on the power of the federal courts. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583-84 (1999) (distinguishing between the "two jurisdictional bedrocks" of subject matter jurisdiction and personal jurisdiction, rejecting the notion that "subject matter jurisdiction is ever and always the more 'fundamental,'" and clarifying that "[p]ersonal jurisdiction, too, is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication'" (quoting Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937))). Indeed, the extent to which declaratory judgment jurisdiction may be more easily found makes the personal jurisdiction inquiry that much more important.

In Viam we noted that

the question of personal jurisdiction . . . is a question of the power of a judicial forum to decide the issues brought before it. A patentee who seeks to enforce its patent may bring an infringement action in a proper forum, and issues regarding the validity and enforceability of the patent may be raised by the defendant. Under our law, a potential defendant in an infringement suit may, in a proper case, preempt the patentee and initiate a suit challenging the enforcement of the patent. The issues on the merits are essentially the same in either situation; the test for personal jurisdiction, for the forum's power to hear the issues, should be the same.

84 F.3d at 428. This statement should not be construed to conflate the distinct requirements of subject matter and personal jurisdiction. Nor should our commentary in Viam be construed to eviscerate the Supreme Court's longstanding requirement that the "minimum contacts" between the defendant and the forum state must "proximately result from actions by the defendant himself that create a 'substantial connection' with the

focus in a declaratory judgment action on the differences, if any, in the meaning of the "arises out of" and "relates to" inquiries for personal jurisdiction.

In many patent declaratory judgment actions, the alleged injury arises out of the threat of infringement as communicated in an "infringement letter," and the patentee may have little contact with the forum beyond this letter. See generally Red Wing Shoe, 148 F.3d at 1359-61. While such letters themselves might be expected to support an assertion of specific jurisdiction over the patentee because "the letters are 'purposefully directed' at the forum and the declaratory judgment action 'arises out of' the letters," Silent Drive, 326 F.3d at 1202, we have held that, based on "policy considerations unique to the patent context," id. at 1206, "letters threatening suit for patent infringement sent to the alleged infringer by themselves 'do not suffice to create personal jurisdiction,'" id. at 1202 (quoting Red Wing Shoe, 148 F.3d at 1359-60) (emphasis added). This is "because to exercise jurisdiction in such a situation would not 'comport with fair play and substantial justice.'" Id. (quoting Red Wing Shoe, 148 F.3d at 1359-60). "Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness." Red Wing Shoe, 148 F.3d at 1360-61; see also Silent Drive, 326 F.3d at 1206. Thus, "[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum and related

_____

forum State." Burger King, 471 U.S. at 475 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

<u>to the cause of action</u> besides the letters threatening an infringement suit." <u>Silent Drive</u>, 326 F.3d at 1202 (emphasis added); <u>see also</u> <u>Calder</u>, 465 U.S. at 788 (noting that "[i]n judging minimum contacts, a court properly focuses on 'the relationship among <u>the defendant</u>, the forum, <u>and the litigation</u>.'" (emphases added) (quoting <u>Shaffer v. Heitner</u>, 433 U.S. 186, 204 (1977))).

b.

Because declaratory judgment actions raise non-infringement, invalidity, and/or unenforceability issues central to enforcement of the patents in question, we have looked beyond the "arises out of" inquiry and have found jurisdiction where such "other activities" in some identifiable way "relate to" enforcement of those patents in the forum. Recently, in <u>Breckenridge</u>, we summarized our precedent regarding what "other activities" in addition to cease and desist letters would suffice to meet the "relate to" requirement for specific personal jurisdiction. 444 F.3d at 1363-67. We observed that:

> [T]he crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there. Where a defendant-licensor has a relationship with an exclusive licensee headquartered or doing business in the forum state, the inquiry requires close examination of the license agreement. In particular, our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities.

444 F.3d at 1366. While "the plaintiff need not be the forum resident toward whom any, much less all, of the defendant's relevant activities were purposefully directed," <u>Akro</u>, 45 F.3d at 1547 (citing <u>Keeton</u>, 465 U.S. 770 and <u>Calder</u>, 465 U.S. 783), we have consistently required the defendant to have engaged in "other activities" that relate to

the <u>enforcement</u> or the <u>defense of the validity</u> of the relevant patents. Examples of these "other activities" include initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum. See <u>Campbell Pet Co. v. Miale</u>, 542 F.3d 879, 886 (Fed. Cir. 2008) (finding jurisdiction over a patentee whose "extra-judicial patent enforcement," namely, enlisting a third party to remove defendant's products from a trade show that was being held in the forum state, went beyond merely informing the defendant of its alleged infringement);[3] <u>Breckenridge</u>, 444 F.3d at 1366 ("Here, in addition to sending letters into the forum state, . . . Metabolite has entered into <u>an exclusive license</u> with PamLab, a company that . . . conducts business in Florida." (emphasis added)); <u>Silent Drive</u>, 326 F.3d at 1202 (noting that "[e]xclusive license agreements with respect to the patents at issue with residents of the forum . . . have, at least in some circumstances, been held sufficient to confer personal jurisdiction" (emphasis added)); <u>Inamed</u>, 249 F.3d at 1361 (finding jurisdiction over a patentee who had previously "granted [the plaintiff] <u>an exclusive license</u> to practice the inventions claimed in the [relevant] patents" (emphasis added)); <u>Red Wing Shoe</u>, 148 F.3d at 1362 (noting that in <u>Akro</u>, "[i]n light of the patentee's substantial contacts with its <u>exclusive licensee</u>, this court determined that the

---

[3] The dissent's comparison of this case to <u>Campbell Pet</u> is, with all due respect, inapt. The patentee's extra-judicial enforcement activities in <u>Campbell Pet</u> were directed at the forum state, where the trade show was being held. Here, by contrast, IOGEAR sent the second letter to Amazon in Seattle, Washington—not the Alabama forum. Moreover, what the dissent has generalized as a patentee's "commercial-type contact," <u>post</u> at 6, amounting to the mere sale of products, had no bearing on the question of specific personal jurisdiction in <u>Campbell Pet</u>. There, the patentee's twelve sales to forum residents were analyzed only with regard to general personal jurisdiction—not specific personal jurisdiction. 542 F.3d at 884 (holding those sales to be too "sporadic and insubstantial" to support general personal jurisdiction).

patent was a sufficient nexus between the contacts and the cause of action to establish 'specific jurisdiction.'" (emphasis added)); Genetic Implant Sys., 123 F.3d at 1458 (finding jurisdiction over a patentee who "contracted with [an exclusive distributor] to sell [the] patented products in [the forum State]" where the agreement was "analogous to a grant of a patent license" (emphasis added)); Viam, 84 F.3d at 430 (finding jurisdiction where "according to their own submission to this court, [the defendants] have initiated a suit seeking to enforce the same patent that is the subject of this suit against other parties, unrelated to this action, in the same district court" (emphasis added)); Akro, 45 F.3d at 1543, 1548-49 (finding jurisdiction over patentee who had exclusively licensed the plaintiff's local competitor to practice the relevant patent, where the license agreement also "oblige[d] [the patentee] 'to defend and pursue any infringement against' the [relevant] patent" (emphasis added)).[4]

While exclusive licensing agreements and other undertakings that impose enforcement obligations on a patentee or its licensee reflect the kind of "other activities" that support specific personal jurisdiction in a declaratory judgment action, the defendant patentee's own commercialization activity does not. What the patentee makes, uses, offers to sell, sells, or imports is of no real relevance to the enforcement or defense of a patent, because "the federal patent laws do not create any affirmative right to make, use, or sell anything." Leatherman Tool Group Inc. v. Cooper Indus., Inc., 131 F.3d 1011, 1015 (Fed. Cir. 1997). "The franchise which the patent grants, consists altogether in the right to exclude every one from making, using, or vending the thing patented, without the permission of the patentee. This is all that he obtains by the

---

[4] The dissent draws "[a]nalogy" to Akro but fails to recognize the absence of any exclusive license or other enforcement obligation in the present case. Post at 6.

patent." Bloomer v. McQuewan, 55 U.S. (14 How.) 539, 549 (1852); see also 35 U.S.C. § 154(a)(1) (2000) ("Every patent shall . . . grant to the patentee, his heirs or assigns, . . . the right to exclude others . . . .") (emphasis added).

Thus, it is not surprising that several district courts have held that a defendant patentee's sales, even of products covered by its own patents in the forum state, do not necessarily relate to the patentee's amenability to specific personal jurisdiction in actions for declaratory judgment of non-infringement and invalidity of those patents. See, e.g., Polymers, Inc. v. Ultra Flo Filtration Sys., Inc., 33 F. Supp. 2d 1008, 1017 (M.D. Fla. 1998) (holding that the "distribution of [the patentee's] own patented goods in Florida is not intimately or sufficiently connected with [the plaintiff's] action to obtain a declaration that [the plaintiff's] goods do not infringe [the patentee's] patents"); DP Envtl. Servs., Inc., v. Bertlesen, 834 F. Supp. 162, 166 (M.D.N.C. 1993) ("The stream of commerce theory for asserting personal jurisdiction is inapplicable in a case such as this where the cause of action did not arise from the manufacturer's products in the forum state."); Ryobi Am. Corp. v. Peters, 815 F. Supp. 172, 177 (D.S.C. 1993) ("A declaratory judgment action involving a patent, when properly brought, does not depend on the actual manufacture of the item by the patent holder or the patent holder's licensee."). But see SRAM Corp. v. Sunrace Roots Enter. Co., 390 F. Supp. 2d 781, 787 (N.D. Ill. 2005) (holding that a declaratory judgment defendant had "'purposefully directed' its activities at residents of [the] forum by marketing a product that directly competes with the allegedly infringing [product]").

Similarly, we have held that mere evidence of sales within the forum of products covered by the relevant patent(s) is insufficient to guarantee specific personal

jurisdiction over the patentee. For example, in <u>Breckenridge</u> we noted that specific personal jurisdiction is not proper where the patentee "has successfully licensed the patent in the forum state, even to multiple non-exclusive licensees, but . . . has no dealings with those licensees beyond the receipt of royalty income." 444 F.3d at 1366 (citing <u>Red Wing Shoe</u>, 148 F.3d at 1357-58). In <u>Red Wing Shoe</u>, we declined to find specific personal jurisdiction over a patentee with thirty-four non-exclusive licensees selling the patented product in the forum State because "none of [the patentee's] licenses requires it to defend or pursue infringement actions involving the [relevant] patent, nor requires [the patentee] to be so nearly involved with its licensees as was the case with the exclusive licensee in <u>Akro</u>." 148 F.3d at 1359, 1362.

In short, a defendant patentee's mere acts of making, using, offering to sell, selling, or importing products—whether covered by the relevant patent(s) or not—do not, in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim for non-infringement, invalidity, and/or unenforceability. Thus, we hold that such sales do not constitute such "other activities" as will support a claim of specific personal jurisdiction over a defendant patentee. While such activities may in the aggregate justify the exercise of <u>general</u> jurisdiction over the patentee, they do not establish a basis for <u>specific</u> jurisdiction in this context.[5] However, based on our precedent, as discussed <u>supra</u>, if the defendant patentee purposefully directs activities at the forum which relate in some material way to the

---

[5]    The dissent states that the majority is "ruling that the commercial activity of a non-resident company in the forum is always irrelevant to personal jurisdiction." <u>Post</u> at 7. We make no such sweeping ruling. With all due respect, the dissent's statement is not only incorrect, but fails to appreciate, inter alia, the distinction between general and specific personal jurisdiction.

enforcement or the defense of the patent, those activities may suffice to support specific jurisdiction. For example, when the patentee enters into an exclusive license or other obligation relating to the exploitation of the patent by such licensee or contracting party in the forum, the patentee's contractual undertaking may impose certain obligations to enforce the patent against infringers. By such conduct, the patentee may be said to purposefully avail itself of the forum and to engage in activity that relates to the validity and enforceability of the patent.

c.

While we are bound by our precedent, it is not without controversy. Even a patentee's exclusive licensing and enforcement activities in the forum raise questions as to the propriety of an assertion of personal jurisdiction over a non-resident defendant. As previously discussed, the Supreme Court has declined to address the exact contours of the "arise out of or related to" language of the specific jurisdiction analysis. See Inamed, 249 F.3d at 1362; 16 James Wm. Moore et al., Moore's Federal Practice § 108.42[7][a] (3d ed. 2008) ("Although the exercise of specific jurisdiction clearly depends on the existence of some nexus between the defendant's contacts and the controversy . . . it is not clear how strong this nexus must be."). Many of the regional circuit courts have adopted restrictive interpretations of this requirement. For example, the First Circuit has held that "[t]he relatedness requirement is not an open door; it is closely read, and it requires a showing of a material connection. . . . [D]ue process demands something like a 'proximate cause' nexus." Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005) (citations and internal quotation marks omitted). Some circuit courts, such as the Ninth Circuit, "rely on a 'but for' test to determine whether a

particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995) (noting that "[t]he question, therefore, is this: but for Royal's contacts with the United States and California, would Ballard's claims against the Bank have arisen?"). Our own interpretation of the "arise out of or related to" language is far more permissive than either the "proximate cause" or the "but for" analyses. A patentee's efforts to license or enforce its patent against unrelated parties in the forum state do not proximately cause a declaratory judgment suit for non-infringement, invalidity and/or unenforceability, nor are these activities a "but for" cause of such a suit. However, we need not confront the soundness of our precedent in the case at hand because even under our more permissive view of the "relates to" requirement, the defendant's activities alleged in this case do not establish a basis for personal jurisdiction.

3.

a.

Here, Avocent primarily argues that Aten International should be subject to personal jurisdiction in Alabama based on the alleged availability of various Aten International products for sale in the forum state. See Viam, 84 F.3d at 428 (holding that the stream of commerce theory of Beverly Hills Fan could apply in the declaratory judgment context, where the patentee is the defendant). Avocent contends that Aten International's direct and indirect sales activity in Alabama demonstrates a nationwide distribution network, through which Aten International delivers products to Alabama residents and consequently is susceptible to jurisdiction in Alabama under Viam. Avocent attempts to distinguish the Red Wing Shoe line of cases as inapplicable to

patentees such as Aten International that manufacture products and distribute them into the forum, either directly or through the stream of commerce. It argues that in these cases the outcome would have been different if the patentees had been defendant manufacturers of commercial products that entered the forum state.

Aten International does not dispute that products it manufactures may be purchased in Alabama but contends that it has never conducted any business in Alabama; that there is no evidence that Aten International controls the distribution of its products, acted in concert with distributors, or had any knowledge that the likely destination of its products was Alabama; and that Avocent failed to establish that any products sold in Alabama relate to this case or even to the underlying patents. It argues that any sales activity in the United States is attributable to its subsidiary, Aten Technology. Aten International cites several regional circuit cases for the proposition that a corporate subsidiary's contacts in the forum state cannot be imputed to the parent corporation absent clear and convincing evidence that the parent controls the subsidiary's activities. See, e.g., Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007) (declining to assert jurisdiction over Verizon based on the actions of its subsidiary without strong evidence of control by the parent corporation).

As an initial matter, Avocent makes no attempt to establish that Aten International's contacts with Alabama, whether through the "stream of commerce" or otherwise, rise to the level of "continuous and systematic" activity sufficient to confer general jurisdiction. The district court rejected Avocent's assertion of general jurisdiction under a "stream of commerce" theory, Avocent, slip op. at 13, and Avocent apparently abandoned that argument on appeal as it pertains to general jurisdiction.

<u>See</u> Appellants' Reply Br. at 16 (arguing that Aten International's reference to the "continuous and systematic general business contact" jurisdictional standard is not relevant to this appeal). Accordingly, we focus our analysis on specific jurisdiction, under which Avocent must make a prima facie showing that Aten International "purposefully directed its activities at residents of the forum," and that Avocent's declaratory judgment action "arises out of or relates to those activities." <u>Breckenridge</u>, 444 F.3d at 1363.

The "purposefully directed" prong of the "minimum contacts" analysis requires us to critically examine the roles of Aten International, Aten Technologies, and IOGEAR. In that regard, Avocent's complaint is fatally deficient. Avocent's complaint does not explicitly identify Aten Technologies or IOGEAR, or explain the relationship between these corporate entities. It merely alleges that Aten International engages in unspecified sales and marketing activity "directly or through their agents or affiliates." Compl. ¶ 4. But as we have held <u>supra</u>, the mere sale of defendant's products— whether covered by the patents in suit or not—is not sufficient to establish specific personal jurisdiction in a declaratory judgment suit. Thus, Avocent has failed to allege "sufficient activities related to the claim of patent non-infringement and invalidity" as to support the assertion of specific personal jurisdiction. <u>Silent Drive</u>, 326 F.3d at 1202.

Avocent attempts to draw a distinction between manufacturing and non-manufacturing patentees for purposes of personal jurisdiction. However, this distinction is not helpful. As previously explained, the only contacts between Aten International and Alabama that are relevant are those that relate in some material way to the enforcement or defense of the patents at issue. Regardless of how Aten International's

products got to Alabama, and regardless of who sold them there, Avocent's complaint and the declarations it submitted to the district court—even when construed in the light most favorable to Avocent—fail to allege any connection to the patents at issue, let alone the enforcement thereof. See Compl. ¶ 4 (alleging that Aten International "transacts business in this District and elsewhere by making, using, selling, and/or offering for sale products in this District" and that these products are "KVM switch products that enable workstations to communicate with, and switch between, remote computers"); id. ¶ 7 (alleging that Aten International "has transacted business within the State of Alabama"). Nowhere in these documents does Avocent identify activities purposefully directed at the forum and related in any material way to the enforcement or defense of the validity of the patents at issue. This critically undermines its assertion of specific personal jurisdiction.

Avocent's reliance on Viam is unavailing. In that case, the patentee's relevant jurisdictional activity included enforcement proceedings involving the same patent in the same court against other alleged infringers—a significant contact with the forum materially related to the enforcement of the relevant patent. See Viam, 84 F.3d at 430 (noting that "according to their own submission to this court, [the defendants] have initiated a suit seeking to enforce the same patent that is the subject of this suit against other parties, unrelated to this action, in the same district court"). Here, by contrast, Aten International and its subsidiary have previously enforced the patents against other parties in the Eastern District of Texas, the Northern District of California, and the International Trade Commission located in Washington, D.C. But Avocent has made no allegation that Aten International has attempted to enforce these patents in any

Alabama court. To the extent the dissent contends that Aten International's enforcement activities in other fora subject it to specific personal jurisdiction in Alabama, post at 12-13, we respectfully disagree. We are aware of no precedent that holds that the filing of a suit in a particular state subjects that party to specific personal jurisdiction everywhere else.

Although we expressed concerns in Viam regarding improper attempts by foreign patentees to shield themselves from domestic litigation, e.g., id. (expressing concern that foreign patentees "would be able to set up domestic fronts through which they could do business without subjecting their patents to the rigorous scrutiny demanded by United States patent law"), we cannot ignore the framework for determining jurisdiction within a given forum, see World-Wide Volkswagen, 444 U.S. at 293 (noting that the Supreme Court has "never accepted the proposition that state lines are irrelevant for jurisdictional purposes"). Moreover, a district court's refusal to exercise personal jurisdiction over a foreign patentee in a particular state does not foreclose the availability of a domestic forum. By statute, every foreign patentee is subject to jurisdiction in at least one state or in the District of Columbia. Section 293 of U.S. Code title 35 provides that foreign patentees

> may file in the Patent and Trademark Office a written designation stating the name and address of a person residing within the United States on whom may be served process . . . . If the person designated cannot be found . . . or if no person has been designated, the United States District Court for the District of Columbia shall have jurisdiction . . . . The court shall have the same jurisdiction to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court.

In addition to having personal jurisdiction over Avocent's patent claims under 35 U.S.C. § 293, and contrary to the dissent's suggestion, post at 16, the

2007-1553                              25

United States District Court for the District of Columbia would have pendent personal jurisdiction over Avocent's non-patent claims to the extent they form part of the "same case or controversy" as the patent claims. 28 U.S.C. § 1367(a); see Coyle, 340 F.3d at 1348 n.1 (Fed. Cir. 2003) (stating that "the district court would also have personal jurisdiction over defendants as to the two state law claims provided that personal jurisdiction existed as to the patent claim and there was supplemental jurisdiction pursuant to 28 U.S.C. § 1367 existed [sic] as to the state law claims"); Silent Drive, 326 F.3d at 1206 (stating that § 1367(a) "confers supplemental jurisdiction with respect to both subject matter and personal jurisdiction where the 'same case or controversy' requirement is satisfied"); Inamed, 249 F.3d at 1362-63 (holding that the district court had both personal jurisdiction over plaintiff's patent misuse claim and pendent personal jurisdiction over other causes of action); Oetiker v. Jurid Werke, G.m.b.H., 556 F.2d 1, 5 (D.C. Cir. 1977) ("[T]he concept of pendent personal jurisdiction may be helpful in achieving the purposes of [35 U.S.C.] § 293 to give American manufacturers relief against harassment by nonresident patentees."); 13 Charles Alan Wright et al., Federal Practice and Procedure § 3523.1, at n.21 (2d ed. Supp. 2008) ("Pendent personal jurisdiction permits a court to entertain a claim against a defendant over whom it lacks personal jurisdiction, but only if that claim arises from a common nucleus of operative fact with a claim in the same suit for which the court does have personal jurisdiction over the defendant.").

* * *

Accordingly, Avocent's allegation that Aten International products may be purchased in Alabama fails to establish either that Aten International "purposefully directed its activities at residents of the forum" or that this action "arises out of or relates to those activities." Breckenridge, 444 F.3d at 1363.

b.

As an independent basis for personal jurisdiction over Aten International, Avocent also argues that jurisdiction is proper under Calder. Avocent contends that the letters sent by Aten International to Avocent Huntsville and to Amazon provide personal jurisdiction because the intended effect of the letters was to slow the sale of Avocent's allegedly infringing products. This argument presumably relates to Avocent's Lanham Act claim for unfair competition, which alleged that Aten International made infringement allegations directly to Avocent's customers "knowing that each patent is invalid, unenforceable and/or not infringed" by Avocent's products. Compl. ¶19.

Here, as in Breckenridge, "the question of infringement is a critical factor in determining liability under the non-patent claims. * * * [Aten International's] letters would neither be unjustifiable nor unfair if the implication of infringement contained therein is true. Accordingly, because the non-patent issues in this case are 'intimately linked to patent law,' Federal Circuit law regarding due process must be applied to the question of personal jurisdiction over [Aten International] with respect to all claims." 444 F.3d at 1362. Aten International's only activity pertinent to Avocent's Lanham Act claim consists of sending letters alleging patent infringement. In Breckenridge, we noted that "the Federal Circuit provides that a patent owner may, without more, send cease and desist letters to a suspected infringer, or its customers, without being subjected to

personal jurisdiction in the suspected infringer's home state." Id. (emphasis added). Thus, while we ultimately found jurisdiction over the patentee in Breckenridge based on its "additional activities in the forum state," namely, an exclusive license, id. at 1366, we would not have accepted jurisdiction based solely on the letters in that case, which included "between ten and twenty letters to vitamin distributors and retailers informing them of the Metabolite patents and PamLab's exclusive license," id. at 1360. Similarly, the three letters attributed to Aten International in this case do not subject it to personal jurisdiction in Alabama.

c.

Finally, because the district court did not have personal jurisdiction over Aten International with respect to the patent and Lanham Act claims, it correctly dismissed Avocent's state law claim for intentional interference with business or contractual relations. Cf. Coyle, 340 F.3d at 1348 n.1 ("[T]he district court would also have personal jurisdiction over defendants as to the two state law claims provided that personal jurisdiction existed as to the patent claim and there was supplemental jurisdiction pursuant to 28 U.S.C. § 1367.") (citing Silent Drive, 326 F.3d at 1206).

## III. CONCLUSION

For the above reasons, we conclude that the district court properly dismissed Avocent's claims against Aten International for lack of personal jurisdiction. Thus its judgment is

AFFIRMED.

# United States Court of Appeals for the Federal Circuit

2007-1553

AVOCENT HUNTSVILLE CORP.
and AVOCENT REDMOND CORP.,

Plaintiffs-Appellants,

v.

ATEN INTERNATIONAL CO., LTD.,

Defendant-Appellee.

Appeal from the United States District Court for the Northern District of Alabama in case no. 7-CV-625, Judge C. Lyn Wood Smith, Jr.

NEWMAN, <u>Circuit Judge</u>, dissenting.

I cannot agree that personal jurisdiction is absent. The entirety of the contacts with the forum, as to both plaintiff and defendant, adequately supports the exercise of personal jurisdiction in the Northern District of Alabama, comporting with the principles of personal jurisdiction as elaborated by the Supreme Court. From my colleagues' contrary ruling I must, respectfully, dissent.

This is not merely the forum to which Aten International sent its notice of infringement; it is also the forum in which Aten International conducts regular retail sales of its products, and in direct competition with Avocent's products; the forum in which the accused infringing activities occur and in which Aten International's threatened suit would be brought; and the forum whose state and common laws apply to the complaint's counts

of disparagement of Avocent's products and tortious interference with commercial relations. In further distinction from the cases cited in the majority's opinion, there is no other forum in which all of the counts of the complaint can be resolved as of right. Indeed, in the closest precedent on similar facts, where the foreign patentee had no place of business in the United States but charged a domestic company with infringement, that foreign patentee was held subject to personal jurisdiction in the state in which the declaratory plaintiff resided and the foreign patentee did business through a distributor. Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424 (Fed. Cir. 1996). In application of Due Process and fairness, all factors must be considered, including the availability of alternative fora, in deciding whether the defendant's contacts with the forum are sufficient for the exercise of personal jurisdiction.

As this court stated in Viam, 84 F.3d at 429, it cannot have been contemplated that a foreign patentee who is participating in the United States market through subsidiaries and distributors, can rely on and enforce its patents against its competitors and the competitors' customers, and compete in ways that may be unfair or illegal under United States law, yet avoid being brought to account by keeping its corporate persona offshore.

My colleagues on this panel state that the law is that a patentee that moves its goods into a forum through a licensee is subject to the jurisdiction of the forum, but a patentee that moves its goods into a forum through a subsidiary and distributors is not subject to the jurisdiction of the forum. No basis for this delicate distinction can be found in precedent. Indeed, the principles that characterize precedent negate such a distinction. The overarching criteria of precedent are Due Process and fairness; requiring some minimal contacts between the forum and the defendant, but evaluating those contacts in

the context of fairness to both parties, and recognizing circumstances such as here prevail, where there is no other forum for this complaint.

With all respect to the panel majority, they err in their analysis, for they simply take in isolation each factor that can contribute to jurisdiction and find such factor inadequate, occasionally finding that some other factor plucked from a prior ruling is also not present, and weave a tapestry that excludes this complaint from every court in the United States. It is the totality of factors, in combination and interrelationship, that must be considered, with a firm fix on the overarching considerations of personal jurisdiction: Due Process and fairness, to the plaintiff as well as the defendant.

Avocent brought this declaratory action in the forum of its corporate residence and principal place of business, the forum in which the accused infringing activities are conducted, the forum to which Aten International directed its notice of infringement, the forum in which Aten International products are regularly sold in large retail stores, the forum in which the effects of the asserted unfair competition and commercial torts are most directly felt, the only forum whose state and common law apply to the commercial counts of the complaint. I shall discuss each of these contributing factors as they relate to the forum and the exercise of personal jurisdiction.

***The considerations for personal jurisdiction***

Plaintiff Avocent Huntsville Corp. is a corporation of the state of Alabama located in Huntsville, Alabama, and is a manufacturing and sales subsidiary of Avocent Corporation, a Delaware corporation having its headquarters and principal place of business in Huntsville, Alabama. Co-plaintiff Avocent Redmond Corp. is also a subsidiary of Avocent Corporation, incorporated in the state of Washington. (Plaintiffs herein collectively "Avocent.") The

defendant, Aten International Co., Ltd., is a corporation of the Republic of China, with its headquarters in Taipei, Taiwan. Aten International has no registered office and no official address in the United States, and sells and distributes its products through a United States subsidiary identified as Aten Technology, Inc., and an entity called IOGEAR.

Aten International, through a lawyer in California, wrote to the President of Avocent Corporation in Alabama, giving notice of a patent publication that the letter stated would be infringed by certain Avocent products. An Aten lawyer also wrote to customers of Avocent, including Amazon.com, stating that certain products that Amazon purchases from Avocent infringe designated patents of Aten International. Aten International is the patentee of the two patents that are the subject of these letters, as well as the manufacturer of the competing products.

Avocent filed suit in the Northern District of Alabama, with declaratory counts of patent invalidity and also counts for unfair competition under federal law and for various commercial torts under Alabama state law. The standard for the exercise of personal jurisdiction in a forum in which the defendant is not resident, is a matter of Due Process; that is, whether it is reasonable and fair to cause the defendant to appear and defend in that forum. The relevant considerations are summarized by the Court as "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985) (internal quotation marks omitted).

The reasonableness of exercise of personal jurisdiction is determined by weighing all

relevant factors, including the interests of all parties, the state's interest, and the collective interest in the overarching considerations of due process and fairness. See Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1352 (Fed. Cir. 2003). All factors must be considered, in the basic inquiry of whether "the quality and nature of the activity in relation to the fair and orderly administration of the laws" is sufficient for a forum to exercise jurisdiction. International Shoe v. Washington, 326 U.S. 310, 319 (1945).

I identify seven general factors that contribute to the relationship between the disputants and involve the Alabama forum. Applying the criteria of precedent to the societal interest in resolution of controversy through judicial process, I conclude that the exercise of jurisdiction in the Alabama forum is not only reasonable, but necessary.

I start with the direct contact with the Alabama forum by Aten International, in which it sent notice of patent infringement to an Alabama resident:

*(1)* ***Aten International's infringement letter to Avocent Corporation's President in Alabama***

Aten International's lawyer in California wrote to Mr. John Cooper, the President and CEO of Avocent Corporation, at the corporate headquarters in Huntsville, Alabama, enclosing a copy of Aten International's published United States patent application entitled "Automatic Switch", which issued as Patent No. 7,035,112. The letter stated: "we believe that [the claims] are relevant to a product your company is making, using, selling, offering to sell and/or importing," and referred to 35 U.S.C. §154(d) which provides for damages for infringement of a published application. Letter from attorney George G.C. Tseng dated May 28, 2004.

We need not decide whether this letter, without more, would provide personal jurisdiction over the sender in the forum of the recipient, for here several additional factors

provide this weight, including Aten International's products distributed in Alabama and sold in Alabama retail stores, and Aten International's contacts with Avocent's customers that are the subject of the counts of unfair competition, disparagement, and interference with commercial relations in Alabama and under Alabama law.  Also relevant is the apparent absence of any other forum as to these counts.

This court has recognized personal jurisdiction in circumstances no less remote than those here.  In Campbell Pet Co. v. Miale, 542 F.3d 879 (Fed. Cir. 2008) this court held that the patentee was subject to declaratory action in the state of Washington, finding sufficient contact where the patentee had attended a trade show in Washington, had complained about the plaintiff's display and asked the show manager to remove it, and then wrote to the plaintiff in Washington, charging infringement.  Although the district court had dismissed the action for lack of personal jurisdiction, this court reversed, stating that "the defendants' conduct went beyond simply informing the plaintiff that they regarded the plaintiff's products as infringing [because] the defendants took steps to interfere with the plaintiff's business by enlisting a third party to take action against the plaintiff."  Id. at 887. The "third party" was the trade show manager, who had been asked (and refused) to remove the offending exhibit.  Thus a single commercial-type contact with the forum, plus an accusatory letter to the plaintiff in the forum, was deemed sufficient.

Analogy is also seen in Akro Corp. v. Luker, 45 F.3d 1541 (Fed. Cir. 1995), where Luker, a resident of California, sent infringement warning letters to Akro's corporate residence in Ohio.  This court concluded that "all Luker's warning letters were, for purposes of our due process inquiry, directed to Akro in Ohio," id. at 1546, and held that the letters, plus Luker's commercial activities conducted through distributors in Ohio, sufficed to

support personal jurisdiction in Ohio "[b]ecause Luker purposefully directed activities regarding the [patent at issue] toward residents of Ohio, those activities are related to Akro's cause of action, and Luker failed to demonstrate that jurisdiction over him would be unconstitutionally unreasonable." Id. at 1549.

All considerations must be weighed, not in isolation, but together, in deciding whether the forum can, and should, entertain the suit. Thus Aten International's commercial activity in the forum is highly relevant:

*(2)* *Aten International's contacts with the Alabama forum include sale of Aten's products through distributors and at retail in Alabama*

My colleagues are mistaken in their statement that "the plaintiffs failed to allege that the Taiwanese company purposefully directed any activities beyond merely sending notice letters at residents of the forum", maj. op. at 1, and in their ruling that the commercial activity of a non-resident company in the forum is always irrelevant to personal jurisdiction. Aten International products are sold in the Best Buy and CompUSA stores in Huntsville and in Birmingham, which is also in the Northern District of Alabama. Declaration of Joseph Hallman ¶5 (Jul. 19, 2007); Declaration of Michael R. Casey ¶4 (Jul. 20, 2007). In World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980) the Court explained that "the forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." It is not disputed that Aten International has placed its products into the stream of commerce including retail stores in Alabama. It is relevant that Aten International is a foreign company, whose commercial operations in the United States are apparently conducted only through subsidiaries and distributors – although, as I shall discuss, Aten

International litigates its patents in its own name in United States tribunals.

The facts of this case are similar to those in Viam, supra, where this court held that the Central District of California had personal jurisdiction of the two non-resident defendants: the Italian corporation SPAL, and SPAL's United States distributor Iowa Export-Import. The defendants' only activity involving California was the sale of goods made in Italy by SPAL and on which SPAL had a United States patent. SPAL's Iowa-based distributor wrote to Viam Corporation in California, stating that Viam's product infringes SPAL's patent. On receiving the letter, Viam filed a declaratory judgment action in the Central District of California.

This court, reversing the district court's dismissal for lack of personal jurisdiction, held that the sale of SPAL's products in California, plus the letter to Viam in California, established that "SPAL purposefully directed its activities at the forum State, and Iowa Export, acting as SPAL's agent, purposefully initiated the interaction with Viam that resulted in the instant suit." 84 F.3d at 429. The court held that: "There is sufficient connection between [the non-resident patent owner's and its distributor's] activity and the litigation to satisfy [the minimum contacts] prong of the International Shoe Due Process test," id., and explained that "'[m]inimum contacts' is understood to require that a defendant has 'purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws'," id. at 428 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). This court held that "allowing the forum to exercise jurisdiction cannot be said to be unfair." Id. at 430.

The analogy is direct: both Aten International and SPAL are foreign owners of United States patents who do business in the forum through United States entities, and who

caused letters to be sent to the asserted infringer at its principal place of business, which was the forum in which the recipient filed suit. This court's holding that SPAL is subject to personal jurisdiction in California requires the same result here. Precedent is that when the patentee's products reach the forum through the stream of commerce initiated by the patentee, this contact, together with letters directed to the accused infringer in the forum, are sufficient to support personal jurisdiction of the patentee in the forum. This is the holding in <u>Beverly Hills Fan Co. v. Royal Sovereign Corp.</u>, 21 F.3d 1558, 1572 (Fed. Cir. 1994), where this court explained that a non-resident manufacturer may be subject to personal jurisdiction based on the manufacturer's placement of infringing goods into the stream of commerce with the reasonable expectation that they would reach that forum.

In direct affront to these general rules of precedent, the panel majority holds that sales of Aten International products in Alabama stores, whether or not the products are covered by the patents in dispute, cannot be considered in establishing "minimum contacts" with the forum, for the majority opinion states: "We hold that such sales do not constitute such 'other activities' as will support a claim of specific personal jurisdiction over a defendant patentee." Maj. op at 19. This holding is contrary to this court's own precedent and that of the Supreme Court. The panel majority postulates that Aten International does not know that its goods are being sold in the Best Buy and other stores in Huntsville and Birmingham, Alabama, and concludes that Avocent must prove that knowledge at this pleading stage. My colleagues refer to Aten International's representation that its business is done in the United States through its subsidiaries and distributors, and rule that "Avocent's complaint is fatally deficient [because it] does not explicitly identify Aten Technologies or IOGEAR or explain the relationship between these corporate entities."

2007-1553                                         9

Maj. op. at 23. My colleagues ignore that the sole listed owner of the patents is Aten International of Taiwan, and the products on sale in Alabama are marked as manufactured by Aten International, thus prima facie placing Aten International atop the chain of commerce. Indeed, Aten International is the plaintiff in infringement suits being prosecuted in Texas and California on these same patents. At the pleading stage, without discovery, Avocent cannot be charged with a "fatally defective" complaint simply because it has not shown the detailed relationship between the parent corporation and its United States affiliates.

**(3)    *Aten International's contacts with Avocent's customers are the focus of the commercial tort counts under Alabama law***

Aten International not only informed Avocent in Alabama that its products infringe an Aten International patent, but also contacted Avocent's customer Amazon.com and suggested that it "discontinue selling the [accused Avocent] products." Declaration of Christopher Thomas ¶8 (Jul. 13, 2007). The letter to Amazon.com is from the VP of Operations/General Counsel of IOGEAR in Hubble, California, identifying the Aten International '112 patent here in suit.

Counts Three and Four of Avocent's Complaint state that Aten International attempted to "dissuade and/or deter Avocent's customers and potential customers from buying Avocent's SwitchView products," that Aten International intentionally interfered with Avocent's business and/or contractual relations, and that Aten International's "false and misleading statements about the nature, characteristics, and/or qualities of Avocent's SwitchView products" caused injury to Avocent including "lost revenue, lost business opportunity, and damages to its reputation and that of its products." Complaint ¶¶20-23, 25-27 (Apr. 6, 2007).

It is not disputed that the products of Aten International and Avocent are in competition. Competitive relationships are of significance to the commercial tort and unfair competition counts. Avocent describes Aten International's actions as "intentionally directed at a[n] [Alabama] resident," and cites Calder v. Jones, 465 U.S. 783, 789 (1984), where the Court held the non-resident defendants subject to personal jurisdiction in California in a libel suit brought by a California resident, since the defendants' "intentional, and allegedly tortious, actions were expressly aimed at California" for the injury to the plaintiff was felt in California. In Calder the defendants had no contacts with California other than phone calls and occasional visits, but the Court held that "jurisdiction over [the Florida residents] in California is proper because of their intentional conduct in Florida calculated to cause injury to [plaintiff] in California." Id. at 789. The Court explained: "An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." Id. at 790. Similarly, the alleged injuries to Avocent were felt in Alabama as a result of Aten International's contacts with Avocent's customers, analogous to the patentee's "intent that the third party take action directly against [the plaintiff's] business interest." Campbell Pet, 542 F.3d at 887.

In general, the courts tend to allow personal jurisdiction when the injury to the plaintiff has been manifested in the forum, and when fairness is not compromised thereby. See, e.g., Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063 (10th Cir. 2008) (personal jurisdiction allowed in Colorado over California defendants because the defendants' conduct in California caused injury to plaintiff in Colorado); Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1088 (9th Cir. 2000) (personal jurisdiction

allowed in California over Georgia defendants because of the defendants' "individualized targeting" against the California entity).

The commercial tort counts, which arise under Alabama law, provide additional support for the exercise of jurisdiction in the Alabama forum.

*(4)* ***Avocent's manufacture of the accused infringing products is conducted in Alabama***

Avocent states that the products referred to in Aten International's letter are Avocent's SwitchView line of KVM switches (K for keyboard, V for video display, M for mouse), which are manufactured in Huntsville, Alabama. Infringement is a compulsory counterclaim for the declaratory judgment action, and Avocent states that the witnesses and evidence with respect to the charge of infringement are centered in Alabama.

Alabama is a focal point for harm to Avocent, should Avocent succeed in its challenge to Aten International's actions directed at Avocent and Avocent's customers. Similarly, Alabama is a focal point for Aten International's proofs of infringement and damages, should Aten International succeed in its charges. No other forum, even if such were available, appears to be superior for resolution of this dispute.

*(5)* ***Aten International has brought infringement suits in other United States tribunals on the same patent on which it wrote to Avocent in Alabama***

Aten International has initiated litigation against several other United States companies for infringement of the same patent about which it notified Avocent and Avocent's customers. Infringement suits have been filed by Aten International in the Eastern District of Texas and the Northern District of California, and Aten International and its U.S. subsidiary Aten Technology filed a complaint with the International Trade Commission. These actions dissipate any possible unfairness in subjecting Aten

International to the jurisdiction of a United States tribunal far from home, for it is apparent that Aten International is not unwilling to invoke the United States tribunals for enforcing its patents.

As this court stated in Viam, 84 F.3d at 429, it cannot have been contemplated that a foreign patentee who is participating in the United States market can rely on and enforce its patents against its competitors and the competitors' customers, yet avoid personal jurisdiction as a defendant. Although I note that Aten International alternatively requested transfer to the Western District of Washington, the district court did not so transfer, perhaps out of uncertainty as to whether there would be any better personal jurisdiction in Washington than in Alabama. See 28 U.S.C. §1631 (when the "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed").

The panel majority states that it would make a difference if Aten International had brought its infringement suits against third parties in the Alabama forum, instead of in Texas and California, apparently on the theory that Aten International would thereby have subjected itself to the jurisdiction of an Alabama court. Perhaps it would add to the contacts with Alabama. However, my reason for referring to Aten International's other litigation is to show that Aten International, although a corporation of Taiwan, is not a stranger to litigation in the United States, and is invoking judicial assistance in enforcing its patent rights – whereas, according to the panel majority, there is no tribunal in which Avocent can seek full relief under its complaint against Aten International. The concern is Due Process of law, not hypertechnical avoidance of the processes of the law.

The purpose of the declaratory action is to permit an accused party to clear the air of potential liability, by bringing its accuser to court. The accuser Aten International is the owner of the patents in suit, and is the only potential defendant in this declaratory action. In Viam the foreign patent owner had in fact sued others in the California forum, but this court in Viam did not hold that this was the reason for accepting jurisdiction in the declaratory action. 84 F.3d at 430. As in the case at bar, the court in Viam discussed that the foreign patent owner had no place of business in the United States but did its business through an Iowa distributor. Id. at 429. There was no issue in that case of "state lines," maj. op. at 25-26, and this court, in accepting that personal jurisdictions of the foreign patent owner was established, stressed the role of Due Process in enabling resolution of disputes involving foreign patent owners.

*(6)*     ***There is no clear alternative forum for this complaint***

The issue on this appeal is whether Aten International can be brought before the Northern District of Alabama on this complaint. The vast majority of the cases on which the panel majority relies, which insulate a "non-resident defendant" from personal jurisdiction, are cases in which there is an alternative forum in which the defendant can be reached, and in which considerations of Due Process favor the alternative forum. One of the Burger King factors recites the assumption that there is an alternative forum available elsewhere than in the forum in dispute. See 471 U.S. at 477 (explaining that "the potential clash of the forum's law with the 'fundamental substantive social policies' of another State may be accommodated through application of the forum's choice-of-law rules"). Avocent's Complaint's counts of violation of Alabama law by "false and misleading statements about the nature, characteristics, and/or qualities of Avocent's SwitchView products" can not,

contrary to the majority's theory, be assumed to be available for resolution, as of right, in the District of Columbia under 35 U.S.C. §293.

Aten International is a corporation of the Republic of China, with its address shown on the patents as Shijr, Taiwan. The record shows no corporate residence or formal place of business in the United States. Indeed, Aten International relies on its foreign residence as grounds for negating jurisdiction in the Alabama forum, as to not only the patent counts of the complaint, but also the counts of unfair competition and violations of Alabama commercial law. The patents in suit identify Aten International Co., Ltd. of Taiwan as the assignee. The patent owner is a necessary party to this action. Although the panel majority proposes that "they can sue in the district of DC," that is far from clear. After searching, we have found no case in which the District Court for the District of Columbia, in receiving an action "respecting the patent or rights thereunder," the words of 35 U.S.C. §293, also adjudicated state law tort claims and unfair competition claims. Although the panel majority cites Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1348 n.1 (Fed. Cir. 2003) as holding that "the district court would also have personal jurisdiction over defendants as to the two state law claims provided [certain circumstances are met]," that was a case in the California district court, reciting the standard rules of pendent jurisdiction in federal court. There was no issue of special section 293 and its statutory assignment of jurisdiction concerning "patent rights".

Another case cited by the panel majority is Silent Drive, Inc. v. Strong Industries, Inc., 326 F.3d 1194 (Fed. Cir. 2006), again bearing no relation whatsoever to jurisdiction assigned by section 293 of the Patent Act. Silent Drive was brought in the Iowa district court, and this court stated the standard rule of supplemental jurisdiction under 28 U.S.C.

§1367(a) when the issues arise from the "same case or controversy." Id. at 1206. The only cited case that relates to section 293 is Oetiker v. Jurid Werke, G.m.b.H, 556 F.2d 1 (D.C. Cir. 1977), where the court did not invoke pendent personal jurisdiction of state law claims for there were no state law claims at issue. Instead, the court explicitly said that "the district court may have discretion to dismiss the pendent claims", even though they were claims under federal law, specifically, a Walker Process antitrust claim. Id. at 5. The D.C. Circuit also remarked that if on remand the elements of antitrust violation were established, the plaintiff "may have a claim for pendent subject-matter jurisdiction over any nonfederal claims that arise from the same 'common nucleus of operative fact', United Mine Workers v. Gibbs, 383 U.S. 715 (1966), a matter on which we make no comment" and for which there appears to have been no issue. Id. at 9 n.28. Neither the panel majority, nor I, has found a case in which the District of Columbia court has resolved state tort claims in a patent case brought to that court under section 293.

Contrary to the panel majority's hypothesis of the jurisdictional reach of the District Court of the District of Columbia, that court recently granted a foreign patentee defendant's motion to dismiss a breach of contract claim for lack of personal jurisdiction, explaining that "[m]ere reference to provisions contained in defendant's patents does not transform what is essentially a contract dispute into a dispute affecting the rights under defendant's patents." Purdue Research Found. v. Sanofi-Synthelabo, S.A., 332 F. Supp. 2d 63, 70 (D.D.C. 2004). The district court emphasized:

> The bare fact that defendant is a nonresident patent owner does not authorize the Court to assert personal jurisdiction over defendant under Section 293 for all matters. Moreover, plaintiff's contention that defendant is attempting to "duck" jurisdiction in United States courts, even if true, does not relieve plaintiff of its burden to establish personal jurisdiction over defendant.

Id.; see, e.g., National Patent Dev. Corp. v. T.J Smith & Nephew Ltd., 877 F.2d 1003, 1010 (D.C. Cir. 1989) ("35 U.S.C. § 293 authorizes the assertion of personal jurisdiction by the United States District Court for the District of Columbia over a nonresident patentee in a suit over patent ownership."); Gianelli v. Chirkes, 377 F. Supp. 2d 49, 53 (D.D.C. 2005) (dismissing the plaintiff's complaint regarding a series of patent assignment contracts for lack of subject matter jurisdiction, holding that a contract dispute does not arise under the patent law). And the Federal Circuit has been quite stingy with supplemental and pendent jurisdiction, even under 28 U.S.C. §1367(a), holding in Jim Arnold Corp. v. Hydrotech Systems, Inc., 109 F.3d 1567 (Fed. Cir. 1997) that "if the patentee pleads a cause of action based on rights created by a contract, or on the common law of torts, the case is not one 'arising under' the patent laws." Id. at 1572. And in all events, the district court retains significant discretion. See, e.g., Conopco, Inc. v. May Dept' Stores Co., 46 F.3d 1556, 1571 (Fed. Cir. 1994) ("The determination of whether to exercise pendent jurisdiction is a matter within the district court's discretion."). It is at best speculative whether Avocent could prosecute and obtain relief, if such is warranted, on all counts of its complaint in the District of Columbia. Due process and fairness are not served by enforcing a forum that neither party requested, and where only part of the dispute can reliably be adjudicated; at least when there is an alternative forum not subject to that disability.

Thus, although I assume that for the patent validity and infringement issues there is statutory jurisdiction in the District of Columbia, that is an inadequate reason to foreclose jurisdiction elsewhere on the facts that here exist. Compare Financial Gen. Bankshares, Inc. v. Metzger, 680 F.2d 768, 771, 778 (D.C. Cir. 1982) (holding that the district court abused its discretion in exercising pendent jurisdiction over a state breach of fiduciary duty

claim related to a federal securities law claim because the resolution involved "novel and unsettled issues of District of Columbia law"), with Network Project v. Corporation for Pub. Broadcasting, 561 F.2d 963, 968 (D.C. Cir.1977) (holding that the district court abused its discretion for failure to exercise pendent jurisdiction over the constitutional claims related to the primary statutory claim); see also Minebea Co., Ltd. v. Papst, 13 F.Supp. 2d 35, 41 (D.D.C. 1998) (in a declaratory action filed by a patent licensee, the court exercised supplemental jurisdiction over plaintiffs' fraud, contract, fiduciary, and conversion claims but declined to exercise jurisdiction over the claims of intentional interference with contractual relations and intentional interference with business relations).

Transfer to the District of Columbia was not proposed by either party. In Burger King the Court emphasized that "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." 471 U.S. at 477. No such compelling case has been presented.

**(7)    *Due process and fairness***

The plaintiff's traditional right to choose the forum is tempered by the defendant's right to defend in a reasonably accessible forum. In Cheney v. U.S. District Court for the District of Columbia, 542 U.S. 367, 370 (2004) the Court explained that the district court has a constitutional responsibility to resolve cases and controversies within its jurisdiction. In turn, the question of personal jurisdiction requires an overview of all the circumstances that affect the particular case, including recognition of the right of residents of the forum to seek its jurisdiction, in light of factors that include the availability of alternative forums. However, fairness must also be considered in respect of jurisdiction of a foreign patentee.

See Viam, 84 F.3d at 429 (emphasizing that "fair play and substantial justice" are important considerations in personal jurisdiction); Akro, 45 F.3d at 1545 ("An additional fairness inquiry rounds out the determination whether personal jurisdiction can be exercised in a given case consistent with the Due Process Clause.").

Avocent argues that Alabama is the only forum in which all of its concerns can be resolved. Aten International does not argue that it is unfair to impose the Alabama forum; Aten International argues simply that there is not personal jurisdiction. For the combination of reasons I have set forth, it is apparent that subjecting Aten International to the Alabama forum's jurisdiction would be neither unreasonable nor unfair. It is shown that Aten International's contacts with the Alabama forum are not "random, fortuitous, or attenuated", Burger King, 471 U.S. at 475, but the normal course of regular business through established distribution to and sales by retailers in the forum. Nor is this the mere "circulation of an article", as in Calder, 465 U.S. at 789. Aten International has been shown to have not only "continuous and systematic general business contacts," Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984), but also has "purposefully directed [its] activities at residents of the forum", Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984).

This case is not an abstruse attack on a distant manufacturer, as the panel majority suggests. In Beverly Hills Fan, 21 F.3d at 1568-69, this court explained that fair play and substantial justice favor the exercise of personal jurisdiction over the out-of-state defendants, where "the burden on [the defendants], . . . is not sufficiently compelling to outweigh [the plaintiff's] and Virginia's interests" in resolving the dispute. The panel majority's holding that "the sale of defendant's products – whether covered by the patent in

suit or not – is not sufficient to establish specific personal jurisdiction," maj. op. at 24, not only contravenes precedent, but ignores all of the other factors that contribute to the relationship among plaintiff, defendant, and the forum.

Although there may indeed be circumstances in which a foreign company should properly be permitted to avoid process, here the foreign company owns United States patents, is conducting business in the United states through its United States companies and distributors, is obtaining the benefits of commerce in the United States, is threatening its United States competitors with liability, is disparaging and interfering with the business of its United States competitors in United States commerce, and is itself invoking the power of United States courts to enforce its United States patents, the same patents that Avocent is here attempting to challenge. The majority's authority is on quite different facts, and in the rare case in which the facts are similar, as in <u>Viam</u>, 84 F.3d at 430, jurisdiction of the foreign company was found.

In sum, I would hold that personal jurisdiction lies in the Alabama forum. From my colleagues' contrary holding, I respectfully dissent.